UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT N. RUSSO,　　　　　　　　　　Civil Action No. 12-10722

　　　　Plaintiff,

　　　　　　　　　　　　　　　　　　　HON. R. STEVEN WHALEN
v.　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge

COMMISSIONER OF SOCIAL
SECURITY,

　　　　Defendant.
_____/

## OPINION AND ORDER

　　Plaintiff Robert N. Russo brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions. For the reasons set forth below, Defendant's motion for summary judgment [Doc. #16] is DENIED and Plaintiff's motion for summary judgment [Doc. #9] is GRANTED, and the case is REMANDED for further administrative proceedings, pursuant to Sentence Four of § 405(g).

## PROCEDURAL HISTORY

　　On May 12, 2010, Plaintiff filed an applications for DIB and SSI, alleging disability as of June 1, 2008 (Tr. 130, 137). After the initial denial of the claim, he requested an administrative hearing, held on May 13, 2011before Administrative Law Judge ("ALJ") John

Dodson (Tr. 41). Plaintiff, represented by James Miller, testified (Tr. 44-64, 73-76), as did Vocational Expert ("VE") Elizabeth Pasikowski (Tr. 64-73). On July 15, 2011, ALJ Dodson found that Plaintiff was not disabled (Tr. 22). On January 25, 2012, the Appeals Council denied review (Tr. 1-6). Plaintiff filed for judicial review of the Commissioner's decision on February 17, 2012.

## BACKGROUND FACTS

Plaintiff, born January 23, 1981, was 30 when the ALJ issued his decision (Tr. 22, 130). His application states that he completed four or more years of college and worked previously as a janitor and stocker (Tr. 152-153). His application for benefits alleges disability as a result of Attention Deficit Hyperactivity Disorder ("ADHD") and bipolar disorder (Tr. 152).

### A. Plaintiff's Testimony

Plaintiff testified that he completed a Master's degree in 2007, but denied any vocational training (Tr. 44-45). He denied physical problems (Tr. 45). He reported taking Vyvanse, Adderall, and Strattera for ADHD and Lamictal and Depakote for bipolar disorder (Tr. 45). He stated that his medication had been prescribed by his psychiatrist, Bella Shah (Tr. 46). He stated that in addition to regular appointments with Dr. Shah, he saw a counselor once a week (Tr. 46).

Plaintiff testified that he last worked in October, 2010 as a temporary factory worker (Tr. 46). He stated that his work consisted of scrubbing, cleaning, and washing down auto parts (Tr. 47). He indicated that he was able to perform that job, albeit with "some degree

of difficulty" (Tr. 47). He stated that he was unable to keep up with production due to his poor "small motor coordination" (Tr. 48). He stated that for a short time, he was reassigned to a job placing bins along a conveyor belt, but soon returned to the job cleaning parts (Tr. 48). Plaintiff reported that prior to the factory work, he worked at McDonald's from November, 2007 to July, 2008 before being fired for "making inappropriate comments to customers" (Tr. 49). He stated that the McDonald's job required him to sweep, mop, and scrub the restrooms and dining room area (Tr. 49). Plaintiff testified that between 1997 and 2000, he worked as a grocery store bagger/bottle return processor (Tr. 49). He stated that when the grocery store changed hands, he was required to take a personality assessment, which he failed (Tr. 50).

Plaintiff testified that he arose anywhere between 8:00 and 11:00 a.m. (Tr. 50). He stated that he spent most of his day exercising or performing household chores (Tr. 50-51). He attributed his lengthy grooming rituals, such as shaving several times a day and 90-minute showers to an Obsessive Compulsive Disorder ("OCD") (Tr. 51-52). He reported attending AA meetings most days (Tr. 52). He alleged that he had been alcohol and drug-free for two years (Tr. 53). He stated that nonetheless, he was inclined to overuse his psychotropic medication (Tr. 54-55). He testified that his father monitored his prescription medication use (Tr. 55).

Plaintiff testified that the bottle return job suited his need for solitude, but added that when a bottle machine broke, he would kick the machine (Tr. 56). He stated that he was also apt to yell at customers who misused the machines (Tr. 56). He attributed his job problems

-3-

to bipolar and "intermittent explosive" disorders (Tr. 56). He opined that ADHD, bipolar disorder, and the intermittent explosive disorder prevented him from working (Tr. 57). He alleged problems dealing with authority figures (Tr. 59). Plaintiff alleged that in the past 10 years, his psychological symptoms had worsened (Tr. 60). He stated that he had a "wonderful" relationship with his therapist (Tr. 61). In response to questioning by the ALJ, Plaintiff reported that he lost his teeth through a combination of "genetics and poor dental hygiene" (Tr. 63).

### B. Medical Evidence

#### 1. Treating Sources

In August, 2007, John P. Manica, M.D. stated that Plaintiff's "academic performance, driving, and work performance are all significantly improved" with the use of psychostimulants (Tr. 208). Dr. Manica stated that he had been treating Plaintiff for almost 20 years, during which time, Plaintiff "has always taken his medication judiciously" (Tr. 208). In January, 2008, Dr. Manica again stated that Plaintiff was "significantly improved" with the use of Ritalin (Tr. 206). He referred Plaintiff to Dr. Michael McMillan, Ph.D., a psychologist, in response to the concerns of Plaintiff's father relating to "psychological dependence on psychostimulants" (Tr. 206). Counseling notes from the same month state that Plaintiff's behavior was unremarkable (Tr. 222). Notes from the same session state that Plaintiff reported impulsive behaviors and poor judgment (Tr. 223).

In January, 2009, Bela Shah, M.D. examined Plaintiff, noting a history of childhood ADD (Tr. 238). Plaintiff reported that he had completed a Master's degree in public

administration and was applying for jobs (Tr. 238). He stated that he had stopped the use of alcohol nine weeks earlier but was prone to misusing Ritalin (Tr. 237). Dr. Shah found the presence of ADHD and impulsive behavior (Tr. 239). She assigned Plaintiff a GAF of 59[1] (Tr. 239).

April, 2009 counseling notes state that Plaintiff had been receiving treatment for substance-related problems (Tr. 220). In June, 2009, Plaintiff reported a facial tick (Tr. 234). In September, 2009, he stated that he was applying for a job (Tr. 231). In October, 2009, Plaintiff appeared listless and unmotivated (Tr. 230). April, 2010 counseling notes show that Plaintiff attended AA meetings regularly (Tr. 212). The following month, Plaintiff reported that he was "doing well" (Tr. 226).

In March, 2011, Dr. Shah and James Wratkowski cosigned a disability opinion recounting Plaintiff's recent treatment history (Tr. 249-250). They opined that "[P]laintiff's symptoms are so severe that they have a profound effect on his ability to function in an employment environment and to interact effectively with others. Regrettably, we do not believe it is realistic for Mr. Russo to establish or maintain employment in the foreseeable future and that he is disabled" (Tr. 249).

## 2. A Consultative Source

In August, 2010, psychologist Julia A Czarnecki, in conjunction with Nick Boneff,

---

[1] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ) (4th ed.2000).

Ph.D., performed a consultative examination of Plaintiff on behalf of the SSA (Tr. 243-247). She noted that Plaintiff's alcohol dependence was currently in remission (Tr. 243). Plaintiff's father stated that his son was "extremely provocative, antagonistic, rude, belligerent and combative" (Tr. 243). Plaintiff reported that he spent his time looking for jobs on the internet, watching television with his girlfriend, driving to AA meetings, and going with friends to karaoke bars (Tr. 244). Dr. Czarnecki observed that Plaintiff "presented as very labile in [] affect and mood" (Tr. 245). However, he did not display "grossly inappropriate" behavior and admitted that he had deliberately refrained from medication that day to demonstrate his behavior "without [] meds" (Tr. 245). Dr. Czarnecki assigned Plaintiff a GAF of 55, making the following conclusion:

> The patient is a 29-year old male who presents with symptoms of a moderate to severe mood disorder with mildly manic symptoms and a general anxiety. He also presents with obsessive-compulsive symptoms and difficulty with concentration and attention secondary to ADHD. His history of having successfully completed high school and two college degrees including a Master's, suggest that these symptoms would not significantly interfere with his ability to attend and focus in structured situations, although it is likely he would struggle in a work environment requiring any stressful interpersonal interactions or demanding situtations with authority figures. The patient appears to be doing relatively well when he is compliant with his prescribed medication such that he should be able to do at least [rote] work-related activities in a more restricted work environment (Tr. 246).

### C. Vocational Expert Testimony

VE Elizabeth Pasikowski classified Plaintiff's former work as a bagger and fast food janitor as unskilled and exertionally medium [2] (Tr. 64). The ALJ then posed the following

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds

...

question to the VE, taking into account Plaintiff's age, education and work experience:

> [N]o exertional limitations. This would be unskilled work . . . not requiring any sort of interaction [with the public]. Only occasional interaction with co-workers and supervisors. No work involving any production-like standards. And no work involving any fine motor skills, such as would be required for jewelry making or watch-repair, that sort of thing. Would that rule out [Plaintiff's] former work? (Tr. 66).

The VE replied that given the above limitations, the individual would be unable to perform Plaintiff's past relevant work but could perform the jobs of packer (2,400 positions in the regional economy), sorter (3,000), and assembler (4,200) (Tr. 68). The VE noted that the jobs would be "simple" and "repetitive" and that "the routine wouldn't change regularly. There would be people around, but not working in conjunction. Would be non-production line, non-hazardous, quota work" (Tr. 68). She added that the jobs would involve mostly gross, rather than fine, motor skills (Tr. 69). She concluded her testimony by stating that her findings were consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 71).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Dodson found that Plaintiff experienced the

---

at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

"severe" impairments of ADHD and bipolar disorder but that neither condition met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16). The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for a full range of unskilled work at all exertional levels with the following limitations:

> [n]o working in conjunction with coworkers or public; no work involving production like standards; no work involving fine motor skills such as for jewelry making or watch repair (Tr. 18).

Citing the VE's job numbers, the ALJ determined that while Plaintiff was unable to perform any of his past relevant work, he could work as a packer, sorter, or assembler (Tr. 22).

The ALJ discounted Plaintiff's allegations of disability, noting that he had been able to hold a long term job in the past (Tr. 19). The ALJ noted that Plaintiff reported improvement in his academic and work performance just four months before the alleged onset of disability (Tr. 20).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way,

without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight."  *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The Treating Physician Analysis

Plaintiff argues that the ALJ erred by rejecting the March, 2011 disability opinion cosigned by Dr. Shah and Plaintiff's therapist, James Wratkowski. *Plaintiff's Brief* at 6-11 (citing Tr. 249-250). Plaintiff admits that the ALJ acknowledged the opinion, but improperly discounted it on the basis that it was "'merely written in response to the attorney's request, and was not provided of the Doctors' own volition.'" *Id.* at 7 (citing Tr. 20). On a related note, Plaintiff contends that the one-time consultative findings adopted by the ALJ also showed psychological limitations inconsistent with the ability to work. *Id.* at 10-11 (citing Tr. 20, 243-245).

"[I]f the opinion of the claimant's treating physician is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record,' it must be given controlling weight." *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009)(citing *Wilson v. CSS,* 378 F.3d 541, 544 (6th Cir.2004). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391–392 (6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson,* at 547; 20 C.F.R. § 404.1527(c)(2).

The ALJ's rejection of Dr. Shah's opinion on the sole basis that it was written at the request of Plaintiff's lawyer does not provide "good reasons" as required by § 404.1527(c)(2). Plaintiff cites *Lester v. Chater,* 81 F.3d 821, 832 (9th Cir. 1995), which states that "[a]n

examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner." *Id.* (citing *Ratto v. Secretary,* 839 F.Supp. 1415, 1426 (D.Or.1993)). The fact that the opinion in the present case was requested of a treating, rather than a one-time consultative source, strengthens Plaintiff's argument that the circumstances under which it was written should not be used as the sole basis for its rejection. Assuming that the opinion was written at the request of Plaintiff's attorney, "'[t]he Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits.'" *Id.* (citing *Ratto,* at 1426). Moreover, to reject a treating physician's opinion on this basis would improperly penalize a claimant for seeking the guiding hand of counsel.

In this case, the ALJ did not state any reasonable basis to reject Dr. Shah's opinion. While *Lester* is not controlling, it is consistent with *Wilson, supra,* which holds that the failure to explain why the physician's opinion is substantively inadequate requires remand. *Id.,* 378 F.3d at 546. The Sixth Circuit requires not just the presence of "good reasons" but articulation of those reasons. *Id.* Likewise here, the ALJ's failure to state how Dr. Shah's opinion was inconsistent with either the medical records or Plaintiff's activities warrants a remand to reexamine Plaintiff's disability claim.

Plaintiff's related argument relating to the weight given to the consultative source findings is less compelling. *Plaintiff's Brief* at 10-11. He contends that the observation that his mood was labile over the course of the examination contradicted the examiner's conclusion that he was capable of a limited range of work. *Id.* (citing Tr. 243-248). However, by

Plaintiff's own account, his erratic behavior was attributable to the fact that he deliberately refrained from taking psychotropic medication on the day of the examination (Tr. 245). He also acknowledged that his mental problems did not prevent him from performing household chores, looking for jobs on the internet, going to bars to sing karaoke, driving to AA meetings, and sustaining a relationship with his girlfriend (Tr. 244). 246).

### B. The Hypothetical Question

Plaintiff also argues that the hypothetical question posed to the VE did not address his moderate limitations in concentration, persistence, or pace ("CPP") as found by the ALJ. *Plaintiff's Brief* at 12-16 (citing Tr. 17, 66).

Moderate deficiencies in CPP suggest substantial limitations which must be acknowledged in the hypothetical question. *Edwards v. Barnhart,* 383 F.Supp.2d 920, 931 (E.D.Mich.2005) (Friedman, J.). The failure to account for moderate deficiencies in CPP in the hypothetical question constitutes reversible error. However, the evidence of record and the ALJ's opinion must be considered in their entirety in determining whether the hypothetical limitations adequately describe the claimant's limitations. *Schalk v. Commissioner of Social Sec.*, 2011 WL 4406824, *11 (E.D.Mich.2011)("no bright-line rule" that moderate concentrational deficiencies require the inclusion of certain hypothetical limitations)(citing *Hess v. Comm'r of Soc. Sec.,* No. 07–13138, 2008 WL 2478325, at *7 (E.D.Mich. 2008)). An ALJ is not required to include the phrase "moderate deficiencies in concentration, persistence, and pace" or other talismatic language in the hypothetical. *Smith v. Halter,* 307 F.3d 377, 379

(6th Cir.2001); *Webb v. Commissioner of Social Sec*. 368 F.3d 629, 632-33 (6th Cir. 2004).

Plaintiff argues specifically that the hypothetical modifiers of "unskilled" and "no work involving any production-like standards" are insufficient to address moderate deficiencies in CPP. *Plaintiff's Brief* at 12-13. He cites his own testimony that he was fired from his factory job because he was unable to keep up with production to support his contention that he is incapable of working as a packer, sorter, or assembler. *Id.* at 14 (citing Tr. 48).

Contrary to Plaintiff's contention, the ALJ's inclusion of certain hypothetical limitations (and omission of others) is amply supported by substantial evidence. First, the VE testified that none of her job findings would require assembly line work but would require quotas (Tr. 68). While Plaintiff attempts to blur the distinction between assembly line work and quotas, line work (in which workers further down the production line would be affected by Plaintiff's alleged pacing deficiencies) was explicitly precluded by the hypothetical (Tr. 66). Further, while Plaintiff testified that he was fired from a factory job, he stated that it was because of his poor fine manipulative skills, not his concentrational problems (Tr. 48). In deference to his testimony, his problems with "small motor coordination" was also included among the hypothetical limitations (Tr. 48, 66).

Moreover, the ALJ's finding of moderate deficiencies in CPP was accompanied by his observation that Plaintiff possessed the concentrational skills to complete both Bachelor's and Master's degrees (Tr. 17). Plaintiff, citing *Cohen v. Secretary of HHS,* 964 F.2d 524, 531 (6th Cir. 1992), argues that his ability to attend school several hours a week is not equivalent to performing full-time work. *Plaintiff's Brief* at 16. However, here, the ALJ's finding that

-13-

moderate deficiencies in CPP did not prevent quota work is also supported by Plaintiff's admitted ability to attend daily AA meetings, perform household chores, sustain a romantic relationship, and socialize with friends (Tr. 244). In particular, his acknowledgment that he was looking for work stands at odds with his professed belief that he is disabled (Tr. 244).

For similar reasons, I disagree that the ALJ's credibility determination was either substantively or procedurally inadequate. Plaintiff criticizes the ALJ's "circular" reasoning, citing the ALJ's statement that the allegations of limitations were discounted "'to the extent they [were] inconsistent with the [] residual functional capacity.'" *Plaintiff's Brief* at 15 (citing 19; *Dragon v. Commissioner,* 470 Fed.Appx. 454, 466, 2012 WL 987758, *11 (6th Cir. March 26, 2012)). However, in contrast to *Dragon,* the ALJ did not state that Plaintiff's claims were discountable merely because they were inconsistent with RFC. The ALJ's statement is followed by a two-page discussion of the evidence supporting the conclusion that Plaintiff's allegations were not credible (Tr. 19-21).

Because the ALJ's failed to provide "good reasons" for rejecting Dr. Shah's opinion, a remand is required. Despite this error, the present transcript does not establish an "overwhelming" case for disability. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171 (6th Cir. 1994). As such, the error discussed herein, while critical, does not automatically entitle the Plaintiff to an award of benefits. *Id.* Accordingly,

Defendant's Motion for Summary Judgment is DENIED.

Plaintiff's Motion for Summary Judgment is GRANTED.

The case is REMANDED for further administrative proceedings consistent with this Opinion and Order.

Judgment will enter in favor of Plaintiff and against Defendant.

IT IS SO ORDERED.


                                            **s/ R. Steven Whalen**
                                            R. STEVEN WHALEN
                                            UNITED STATES MAGISTRATE JUDGE

Date: March 31, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on April 1, 2013.

                                                  s/Johnetta M. Curry-Williams
                                                  Case Manager